UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ADDIUM, INC. and METER GROUP, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>TROLMASTER AGRO INSTRUMENTS CO.; THINKGROW AGRICULTURAL TECHNOLOGY, INC.; MANGO TROL LABS, INC.; MANGO TECH STORE, INC.; MANGO TROL, INC.; and MANGO TECH STORE, INC.,<br><br>Defendants. | No. 2:26-cv-02326-WBS-AC<br><br>ORDER RE: PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

----oo0oo----

Plaintiffs make and sell the TEROS ONE, an agricultural sensor that measures the moisture content of soil and other growing media. (Agnes Decl. (Docket No. 29-18) ¶¶ 40-43; Castiglione Decl. (Docket No. 29-2) ¶¶ 21-34.) The TEROS ONE is specially designed to account for the inaccuracies that are common when performing readings in indoor cultivation environments. (Castiglione Decl. ¶¶ 11-34.) The TEROS ONE is

covered by U.S. Patent No. 11,415,612 (the "Asserted Patent") (id. ¶ 35), and its firmware in particular is covered by U.S. Copyright Registration No. TX 9-601-758 (the "Asserted Copyright") (see Docket No. 1-5; Mot. (Docket No. 29-1) at 10).

Defendants sell the WCS-9 sensor, which defendants have "marketed as being specifically engineered to support automated indoor growing operations." (Walden Decl. (Docket No. 29-8) ¶ 14.) Plaintiffs sued defendants on July 1, 2026, alleging the WCS-9 infringes the Asserted Patent and the Asserted Copyright. (See generally Docket No. 1.) Plaintiffs now move for a preliminary injunction that would both enjoin defendants from making, using, selling, offering for sale, or importing the WCS-9 into the United States, and require defendants to issue a recall for the WCS-9 and cease all cloud- and application-based support for the WCS-9. (Mot.; Docket No. 32.)

## I. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20. Whether to grant a preliminary injunction is left to the district court's discretion. Am. Trucking Ass'ns, Inc. v. City of L.A., 559 F.3d 1046, 1052 (9th Cir. 2009).

## II. Discussion

Shortly before plaintiffs filed their complaint,

defendants purportedly phased out the version of the WCS-9 plaintiffs specifically accused of infringement in their motion ("WCS-9 Version One") and transitioned to a second version ("WCS-9 Version Two"). Plaintiffs nevertheless request that the injunction cover both versions of the WCS-9. The court will address each WCS-9 version separately in deciding plaintiffs' motion.

A. <u>WCS-9 Version One</u>

1. <u>Likelihood of Success</u>

a. <u>Copyright Infringement</u>

Plaintiffs are likely to succeed on the merits of their copyright infringement claim as to the WCS-9 Version One. "To establish copyright infringement, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Loomis v. Cornish</u>, 836 F.3d 991, 994 (9th Cir. 2016). Because plaintiffs have submitted a copyright registration for the Asserted Copyright (Docket No. 1-5), the court presumes the Asserted Copyright is valid. <u>See</u> <u>Paramount Pictures Corp. v. Primewire</u>, No. 2:21-CV-09317-MCS-SK, 2022 WL 423408, at *2 (C.D. Cal. Jan. 7, 2022) (citing 17 U.S.C. § 410(c)); <u>United Fabrics Int'l, Inc. v. C&J Wear, Inc.</u>, 630 F.3d 1255, 1257 (9th Cir. 2011)).

Plaintiffs also offered compelling -- and undisputed -- evidence that defendants copied the WCS-9 Version One's firmware from the TEROS ONE. The sales department for Aroya -- the brand name used to market the TEROS ONE -- received an unsolicited tip from someone who had purportedly worked for "TrolMaster, ThinkGrow, etc." (Walden Decl. ¶ 5.) The tip attached a UPS

label from "TROLMASTER RMA . . . THINKGROW" to (what appears to be) Trolmaster CEO Jason Chan in Hong Kong.[1] The label also listed "AROYA" as the invoice number and bore a shipment description of "WATER CONTENT SENSOR AND DRIVERS." (Id. ¶¶ 6-10.) According to the tipster, it was "frequently [their] job to purchase goods here [presumably, the Aroya website] and then send them back to HK/China to the factory in Xiamen for reverse engineering or comparison." (Id. ¶ 5.)

Testing by plaintiffs' engineer also showed the WCS-9 Version One's firmware to be a copy of the TEROS ONE's firmware. For example, the engineer issued 15 commands made specifically for the TEROS ONE to the WCS-9 Version One.[2] (Id. ¶¶ 56-58.) The WCS-9 Version One provided the exact responses one would expect from a TEROS ONE. (Id. ¶¶ 56-58.) Such responses included identifying itself as a "METER" sensor, the name of the

---

[1] The recipient's information on the shipping label is partly obscured.

[2] The engineer could not perform these commands using the WCS-9 Version One's circuit board. (Walden Decl. ¶¶ 43, 44, 48-52.) Plaintiffs contend that the WCS-9 Version One was "manufactured in a way to prevent standard software access or analysis," which "strongly suggests TrolMaster was intentionally try[ing] to cover the tracks of their copying." (Mot. at 8 n.3.) To issue the commands to the WCS-9 Version One processor, the engineer replaced the processor on a TEROS ONE circuit board with the WCS-9 Version One processor. (Walden Decl. ¶ 55.) This "hybrid device" immediately powered on and awaited commands. (Id.) "This outcome was genuinely surprising" to the engineer, since, in his experience, "transplanting a microcontroller from one manufacturer's product into a competing manufacturer's board should virtually never produce a functional device . . . . The fact that this device powered on and responded correctly to [the] queries was, by itself, strong evidence of a shared design origin." (Id.)

TEROS ONE's developer; identifying its firmware as "TER15", the internal name of the TEROS ONE's firmware; identifying its serial number as "T15-AL0009439," a serial number that is consistent with TEROS ONE devices rather than WCS-9 devices; identifying its firmware version number and build date as those of the TEROS ONE's firmware; and outputting memory contents that was "byte-for-byte identical" to the TEROS ONE's firmware. (Id. ¶¶ 56-63.)

Plaintiffs' engineer also compared the coding of each product's firmware and found they were identical across five code regions. (Id. ¶¶ 64-70.) Similarly, the six calibration values stored in the WCS-9 Version One's memory exactly matched those of the TEROS ONE. (Id. at ¶¶ 71-74.)

These similarities alone are striking. Together with the evidence plaintiffs presented of reverse engineering -- and particularly given that defendants do not dispute any of the above evidence -- plaintiffs have clearly demonstrated a likelihood of success on the merits of their copyright infringement claim.

b. Patent Infringement

The same is true for plaintiffs' patent infringement claim. "[T]he patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1376 (Fed. Cir. 2009). As defendants do not challenge the validity of the Asserted Patent, the court presumes it is valid. Id. at 1377.

Further, plaintiffs provided a detailed and uncontested

explanation of how the WCS-9 Version One practices each and every limitation of several claims of the Asserted Patent. (See generally Castiglione Decl.); see also Hutchins v. Zoll Med. Corp., 492 F.3d 1377, 1380 (Fed. Cir. 2007) ("Patent infringement requires that every element and limitation in a correctly construed claim is embodied in the accused system . . . ."). Plaintiffs have thus demonstrated they are likely to succeed on their patent infringement claim. See NuVasive, Inc. v. Alphatec Holdings, Inc., No. 3:18-CV-347-CAB-MDD, 2018 WL 3361457, at *5 (S.D. Cal. July 10, 2018) (finding likelihood of success on patent infringement claim where defendant did not challenge plaintiff's infringement analysis).

2. Irreparable Harm

Plaintiffs request two types of preliminary injunctive relief: a prohibitory injunction (i.e., enjoining defendants from making, using, selling, offering for sale, or importing the WCS-9) and a mandatory injunction (i.e., requiring defendants to issue a recall for the WCS-9 and cease all cloud- and application-based support for the WCS-9). See N.D. v. Reykdal, 102 F.4th 982, 992 (9th Cir. 2024) ("Whereas a prohibitory injunction aims at simply maintaining the status quo, . . . a mandatory injunction orders a responsible party to take action . . . .") (citations and quotations omitted). Because a preliminary injunction "must be tailored to remedy the specific harm alleged," Lamb-Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991), the court analyzes the harm that each type of injunction aims to address separately.

a. Prohibitory Injunction

Plaintiffs offered copious evidence of the irreparable harm they would experience if defendants continued to market and sell the WCS-9 Version One, including loss of customers, loss of market position, loss of ecosystem sales, loss of word-of-mouth advertising, harm to reputation, price erosion, and the "right to exclude direct competitors." (Mot. at 18-29; see generally Agnes Decl.) Defendants do not dispute this evidence. Instead, defendants argue that plaintiffs cannot show irreparable harm because defendants no longer use or sell WCS-9 Version One. (Docket No. 36 at 6-7; Docket No. 36-1 ¶¶ 5-12; Docket No. 36-2 ¶ 9.)

"The sole purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009) (citations and quotations omitted); see also Abbott Lab'ys v. Sandoz, Inc., 544 F.3d 1341, 1344-45 (Fed. Cir. 2008) ("[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.") (citations and quotations omitted). The "status quo ante litem" is "the last uncontested status which preceded the pending controversy." Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citations and quotations omitted). Accordingly, where the accused infringer is not currently infringing and has no plans to infringe, a preliminary injunction is generally not warranted, since "the status quo is maintained without injunctive relief." See Roper Corp. v. Litton Sys., Inc., 757 F.2d 1266,

1273 (Fed. Cir. 1985); see also Annotated Patent Digest (Matthews) § 32:51 (collecting cases).

Here, plaintiffs appear not to contest defendants' representations that they have stopped using and selling WCS-9 Version One and do not intend to resume such use or sales in the future.[3] Therefore, since the status quo is maintained without injunctive relief as to the WCS-9 Version One, plaintiffs have failed to show they would be irreparably harmed absent the requested prohibitory injunction. See Roper, 757 F.2d at 1273 (affirming denial of preliminary injunction where defendants did not currently make, practice, or intend to make or practice the accused products); see also McDavid Knee Guard, Inc. v. Nike USA, Inc., 683 F. Supp. 2d 740, 748 (N.D. Ill. 2010) (denying preliminary injunction where defendant testified it no longer practiced the accused method and plaintiff presented no evidence to the contrary); Garmin Int'l, Inc. v. Bryton, Inc., No. CIV.A. 11-2162-KHV, 2011 WL 3799694, at *2 (D. Kan. Aug. 25, 2011) (collecting cases denying preliminary injunctions where infringing conduct had ceased).

---

[3] Plaintiffs originally attacked the representations in defendants' opposition as not credible and requested an evidentiary hearing. (Docket No. 29 at 2; Reply (Docket No. 40) at 3-6.) However, plaintiffs have since withdrawn their request for an evidentiary hearing and insist that they do "not controvert the relevant facts offered in support of Defendants' Opposition." (Docket No. 41 at 2.) Although plaintiffs later asserted that "Defendants continue to market and sell the infringing WCS-9 sensor" (id. at 2), the court must interpret plaintiffs' statement as asserting only that defendants continue to market and sell the allegedly infringing WCS-9 Version Two sensor, given plaintiffs' insistence that they do not dispute the facts presented in defendants' opposition.

Plaintiffs' cited authority is not to the contrary. In United States v. W. T. Grant Co., the Court held only that "voluntary cessation of allegedly illegal conduct" does not render a case moot under Article III. 345 U.S. 629, 632 (1953). The Court nevertheless affirmed the district court's denial of injunctive relief, since "the District Judge could decide that there was no significant threat of future violation and that there was no factual dispute about the existence of such a threat." Id. at 635.

Plaintiffs also cite Polo Fashions, Inc. v. Dick Bruhn, Inc., where the court rejected the notion that the plaintiff was required "to introduce concrete evidence that the defendants are likely to infringe again." 793 F.2d 1132, 1135 (9th Cir. 1986). But that case involved granting a permanent injunction, not a preliminary injunction. Unlike preliminary injunctions, permanent injunctions are not issued to preserve the status quo pending a resolution on the merits; they are issued to "protect[] established rights that a jury found were violated." Y.Y.G.M. SA v. Redbubble, Inc., 75 F.4th 995, 1006-07 (9th Cir. 2023). Moreover, whereas preliminary injunctions only preserve the status quo until trial, permanent injunctions often aim to prevent further harm indefinitely. Geertson Seed Farms v. Johanns, 570 F.3d 1130, 1139 (9th Cir. 2009) (noting "a typical permanent injunction . . . is of indefinite duration"), rev'd and remanded on other grounds sub nom. Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139 (2010). Finally, while a court deciding a motion for a preliminary injunction retains jurisdiction over the matter, a motion for a permanent injunction is not decided until

"the point in time when [a] court would otherwise relinquish jurisdiction over the action." Dish Techs. LLC v. MG Premium Ltd, No. 2:23-CV-552-HCN-DAO, 2025 WL 2061922, at *4 (D. Utah July 23, 2025).

Taking these together -- the fully adjudicated violation, the loss of jurisdiction upon denial of the permanent injunction, and the indefinite period of time available for the accused party to continue in its misconduct -- the movant for a permanent injunction will generally bear a greater risk of irreparable harm than the movant for a preliminary injunction. It is unsurprising, therefore, that courts generally find that cessation of infringement negates a finding of irreparable harm at the preliminary-injunction stage, but not necessarily at the permanent-injunction stage. See Annotated Patent Digest (Matthews) §§ 32:521, 32:160.

Plaintiffs' remaining cases are inapposite. In each case, the plaintiffs brought causes of action that, by statute or common law, entitled the plaintiff to a presumption of irreparable harm upon demonstrating a likelihood of success on the merits. FTC v. Sage Seminars, Inc., No. C 95-2854 SBA, 1995 WL 798938, at *2 (N.D. Cal. Nov. 2, 1995) (applying statutory presumption of harm in false advertising case under 15 U.S.C. § 53(b)); H.O. Sports, Inc. v. Earth & Ocean Sports, Inc., No. C00-1846P, 2001 WL 322175, at *4 (W.D. Wash. Jan. 12, 2001) (applying common-law presumption of irreparable harm in a trademark infringement case). Here, by contrast, plaintiffs' demonstration of likelihood of success does not entitle them to a presumption of irreparable harm under either patent or copyright law. Robert

Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011); Perfect 10, Inc. v. Google, Inc., 653 F.3d 976, 980-81 (9th Cir. 2011).

Since plaintiffs have not demonstrated irreparable harm from any continued use or sale of the WCS-9 Version One by defendants, plaintiffs' motion for a preliminary injunction prohibiting such conduct must be denied. Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011) (noting irreparable harm is a "prerequisite for [preliminary] injunctive relief" in a copyright infringement case); Apple Inc. v. Samsung Elecs. Co., 695 F.3d 1370, 1374 (Fed. Cir. 2012) (same for patent infringement).

b. Mandatory Injunction

"The standard for issuing a mandatory preliminary injunction is high." Doe v. Snyder, 28 F.4th 103, 111 (9th Cir. 2022).[4] Because mandatory injunctions go "well beyond simply maintaining the status quo," they are "particularly disfavored." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (citations and quotations omitted). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." Doe, 28 F.4th at 111 (citations and quotations omitted).

Plaintiffs have identified several harms that would

---

[4] "[E]xcept for considerations specific to patent issues," which are governed by Federal Circuit law, the court is bound by Ninth Circuit law. Philips N.V. v. Thales Dis Ais USA LLC, 39 F.4th 1377, 1379 (Fed. Cir. 2022).

ensue were the court not to grant their requested mandatory preliminary injunction. For example, plaintiffs offered evidence of lost sales from the "ecosystem effect," i.e., "where one company's customers will continue to buy that company's products and recommend them to others." Metalcraft of Mayville, Inc. v. The Toro Co., 848 F.3d 1358, 1368 (Fed. Cir. 2017); (see Mot. at 22; Agnes Decl. ¶ 81). Plaintiffs also provided arguments and evidence that customers' continued use of the WCS-9 Version One causes loss of reputation, goodwill, and word-of-mouth advertising.[5] (See Mot. at 23-26; Agnes Decl. ¶¶ 50-54, 60-62, 71-74, 88-90, Exs. C.1, C.2, C.8, C.11.)

While defendants do not dispute -- and the court accordingly finds -- that this evidence demonstrates irreparable harm from customers' continued use of WCS-9 Version One, plaintiffs have not shown that this conduct is sufficiently "extreme" or "serious" to warrant the "particularly disfavored" remedy of a mandatory preliminary injunction. Garcia, 786 F.3d at 740; Doe, 28 F.4th at 111. Indeed, plaintiffs' motion did not even address the heightened showing of harm required when seeking a mandatory injunction.

---

[5] The remaining harms plaintiffs identified derive from defendants' continued sale of the WCS-9 Version One (i.e., the harm that the prohibitory injunction aims to prevent), not customers' continued use of the WCS-9 Version One. (See Mot. at 18-22 (arguing plaintiffs' lost customers, sales, and market share derive from plaintiffs' having to continue competing against defendants in the marketplace); id. at 26-27 (arguing price erosion will result "[i]f TrolMaster's infringement does not stop immediately"); id. at 27-28 (arguing defendants' continued infringement is harmful because plaintiffs "have no interest in licensing its patent and copyrighted software to its competitors").)

Moreover, while the court need not consider plaintiffs' arguments made for the first time in their reply brief, Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007), plaintiffs' reply still misses the mark. Plaintiffs' reply repeats their argument that defendants' infringement was willful (Reply (Docket No. 40) at 11), but the willfulness of defendants' infringement does not inform whether such infringement resulted in extreme or very serious harm.[6] The only supposedly extreme or serious harm plaintiffs identify in their reply is the harm from defendants' continued sale of the WCS-9 Version One -- not from customers' continued use of the WCS-9 Version One. (Reply at 11.) Plaintiffs have thus failed to show that the harm resulting from

---

[6] Plaintiffs rely on a Ninth Circuit case holding that a district court should consider the following factors when deciding a mandatory preliminary injunction motion in a trademark infringement case:

> (1) the willful or intentional infringement by the defendant; (2) whether the risk of confusion to the public and injury to the trademark owner is greater than the burden of the recall to the defendant; and (3) substantial risk of danger to the public due to the defendant's infringing activity.

(Reply at 11 (quoting Marlyn Nutraceuticals, Inc., 571 F.3d at 879).) The court declines to apply these factors in the copyright or patent infringement context, particularly since they would require the court to consider the risk of consumer confusion. Indeed, the Supreme Court has cautioned courts not to "misuse or over-exten[d]" trademark laws, which are designed to protect against consumer confusion, in a way that conflicts with patent or copyright laws, which are designed to reward creators for their creativity. Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 33 (2003). Regardless, even if consumer confusion were relevant, plaintiffs have not shown it. Nor have they shown danger to the public. (See Reply at 11 (conceding absence of risk of danger to the public).) The court thus finds plaintiffs could not show entitlement to a mandatory injunction even under their own test.

defendants' failure to prevent their customers from continuing to use the WCS-9 Version One would be extreme or serious enough to justify a mandatory preliminary injunction.

None of plaintiffs' cases change this analysis. In each case, the court ordered a preliminary injunction recalling infringing works from the hands of distributors -- not end customers -- because these distributors would continue to sell the infringing works to end customers. Merit Diamond Corp. v. Frederick Goldman, Inc., 376 F. Supp. 2d 517, 527 (S.D.N.Y. 2005); CyberMedia, Inc. v. Symantec Corp., 19 F. Supp. 2d 1070, 1079 (N.D. Cal. 1998). Here, by contrast, the requested mandatory injunction would go after products that are already in the hands of end customers. Where the only theory of harm plaintiffs have presented is based on the harm from defendants' continued sale of the allegedly infringing products, stripping current customers of the ability to use the infringing products would do nothing to address this harm. See Lamb-Weston, 941 F.2d at 974 ("Injunctive relief . . . must be tailored to remedy the specific harm alleged. . . . An overboard [sic] injunction is an abuse of discretion.").

Plaintiffs have accordingly failed to demonstrate that their harm is serious enough to justify a mandatory injunction.

B. WCS-9 Version Two

Plaintiffs seek the same injunction against WCS-9 Version Two as they do for WCS-9 Version One. At the outset, plaintiffs do not contest defendants' assertion that "the WCS-9 Version Two is not able to execute the WCS-9 Version One firmware," nor their assertion that "in creating the WCS-9

Version Two firmware, [the engineer] did not copy any WCS-9 Version One machine code." (Chan Decl. (Docket No. 36-2) ¶¶ 19, 21.)[7] Nor have the parties otherwise introduced any evidence that defendants copied plaintiffs' copyrighted firmware in order to develop the firmware for WCS-9 Version Two. The court thus finds plaintiffs have not shown a likelihood of success for their copyright infringement claim pertaining to WCS-9 Version Two.

For patent infringement, plaintiffs have not introduced any evidence that the WCS-9 Version Two infringes the Asserted Patent. Plaintiffs argue, however, that the court may assume the WCS-9 Version Two infringes in the same way as WCS-9 Version One because defendants have not shown how the differences in Version Two[8] defendants identified render Version Two not infringing. (Reply at 7-8; Docket No. 40-2 ¶¶ 5-11.)

Plaintiffs are incorrect. It is the patentee's burden to show that an accused product is infringing, not the accused infringer's burden to show that its product is not infringing. ABC Corp. I v. P'ship & Uninc. Ass'ns Identified on Sched. "A", 52 F.4th 934, 944 (Fed. Cir. 2022); see also L & W, Inc. v. Shertech, Inc., 471 F.3d 1311, 1317 (Fed. Cir. 2006) (rejecting patentee's argument on summary judgment that defendant had to

---

[7] As noted above, although plaintiffs originally challenged these representations as not credible, plaintiffs have since abandoned this position (at least for purposes of their current motion).

[8] These differences include "different hardware components," including a "different microprocessing unit," "different firmware," and "different methods of calculating sample water content and conductivity than were used in the WCS-9 Version One." (Chan Decl. ¶ 19.)

demonstrate how certain of defendant's other products were sufficiently different from defendant's infringing product).

Moreover, when the alleged infringement concerns multiple products, a court generally must assess likelihood of success by "conduct[ing] a product-by-product infringement analysis" rather than an aggregate analysis covering all accused products. ABC Corp., 52 F.4th at 943 (holding district court abused its discretion by "fail[ing] to make product-by-product infringement findings"). An aggregate analysis may be proper if, for example, "the accused products differ from each other only in insignificant details." Id. at 945 n.9. Here, however, plaintiffs' opening brief did not even contemplate the existence of the WCS-9 Version Two, let alone demonstrate how Version Two is similar enough to Version One to justify treating Version One as representative of Version Two. See Panavision Imaging, LLC v. Omnivision Techs., Inc., No. CV 09-1577-DMG(CTX), 2010 WL 11507882, at *2 (C.D. Cal. Mar. 15, 2010), report and recommendation adopted, No. CV09-1577 DMG (CTX), 2010 WL 11507883 (C.D. Cal. June 7, 2010) (holding that a "plaintiff must show that the accused products for which it has provided claim charts are in fact representative of the accused products that were not charted") (citations and quotations omitted). Nor have defendants conceded in any way that Version One is representative of Version Two in an infringement analysis. See Rambus Inc. v. Hynix Semiconductor Inc., 642 F. Supp. 2d 970, 989-90 (N.D. Cal. 2008) (denying summary judgment of infringement for a particular accused product even though the accused product was "very similar" to infringing product, because defendant had not

stipulated that the infringing product was representative of the accused product). Plaintiffs have thus failed to demonstrate a likelihood of success as to WCS-9 Version Two.

## III. Conclusion

Plaintiffs have not shown they are entitled to a preliminary injunction on this record. However, if further evidence demonstrates that defendants continue to sell WCS-9 Version One, or that WCS-9 Version Two infringes the Asserted Patent or Asserted Copyright, plaintiffs may refile their motion. In particular, if further evidence reveals defendants were deceptive about their purported phaseout of Version One or had no reasonable basis to conclude WCS-9 Version Two is non-infringing, the court will determine the extent to which additional relief apart from the preliminary injunction is warranted.

IT IS THEREFORE ORDERED that plaintiffs' motion for preliminary injunction (Docket No. 29) be, and the same hereby is, DENIED without prejudice.

Dated: September 29, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE